**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**FROMON D. JENRETTE,
D.O.C. # T20386,**

      **Plaintiff,**

**vs.**                                    **Case No. 4:20cv275-TKW-MAF**

**SERGEANT BARTELL
and OFFICER PUMPHREY,**

      **Defendants.**
**_____/**


## REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se, filed a civil rights complaint pursuant to

42 U.S.C. § 1983, ECF No. 1, alleging that the two named Defendants

were deliberately indifferent to her[1] safety and failed to protect her from

sexual assault.  Plaintiff was granted leave to proceed in forma pauperis,

ECF No. 5, and after service of process, Defendants filed answers to

Plaintiff's complaint.  ECF Nos. 30, 32.  An Initial Scheduling Order was

entered in December 2020, ECF No. 31, and Defendants filed their

---

[1] Plaintiff's complaint states that Plaintiff "is a trans-woman," transitioning from male to female.  ECF No. 1 at 1.  Plaintiff's expressed preference for the use of female pronouns is acknowledged.  *Id.*

summary judgment motion on May 5, 2021.  ECF No. 39.  Plaintiff was advised of her responsibility in responding to that motion, ECF No. 40, Plaintiff's opposition, ECF No. 47, was timely filed.

Plaintiff has submitted numerous motions requesting the appointment of counsel.  In early June, three such motions were denied.  ECF Nos. 41-43, 45.  Plaintiff has recently filed another motion requesting that counsel be appointed.  ECF No. 52.  Ruling on that motion has been deferred pending the recommendation to be made on the summary judgment motion.  This Report and Recommendation addresses that motion as well as the pending summary judgment motion.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  As

noted above, the parties were provided a sufficient amount of time to conduct discovery and no motions were filed requesting that time be extended.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Sconiers v. Lockhart, 946 F.3d 1256, 1262-63 (11th Cir. 2020), and the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial."  Sconiers, 946 F.3d at 1263 (11th Cir. 2020) (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).  Where there is a genuine dispute of material fact, summary judgment must be denied.

**The relevant Rule 56(e) evidence**

Plaintiff Jenrette is a "trans-woman" and was housed in the "special housing unit" of Jefferson Correctional Institution's administrative confinement dormitory in May of 2018.  ECF No. 47, Ex. A (Plaintiff's declaration) [ECF No. 47 at 6];[3] ECF No. 1 at 2 (complaint).  Plaintiff has a feminine voice, female appearance, and presentation.  ECF No. 1 at 2.

---

[3] Because Plaintiff does not have access to the Court's electronic docket, references are made to both the exhibit page and electronic page number.

Case No. 4:20cv275-TKW-MAF

On May 15, 2018, correctional officers brought inmate Adams[4] to

Plaintiff's cell, but Adams told the officers that he could not be housed with

Plaintiff because Plaintiff was homosexual and Adams was a gang

member.  ECF No. 47 at 6.  Plaintiff said that inmate Adams acknowledged

that he was  a gang member and told the officers that he would "beat" and

"f– up" the Plaintiff and kill her.[5]  ECF No. 1 at 2, 3.  The officers removed

Adams from Plaintiff's cell, finding them "incompatible" based on Adams'

statement.  ECF No. 47 at 6.

Later that same day, after a shift change, the Defendants brought

inmate Adams back to Plaintiff's assigned cell.  *Id.;* see also ECF No. 1 at

3.  Defendants Bartell and Pumphrey said that Adams would be placed in

Plaintiff's cell "to prove a point" and show that "inmates will not dictate

housing."  ECF No. 47 at 6-7.  Defendant Bartell advised that "housing

assignments were full" and inmate Adams needed to be housed with the

Plaintiff.  ECF No. 1 at 5.  Defendant Bartell also said that just because

---

[4] In light of the potential safety issues which will exist by identifying this inmate - who is not a party to this litigation - a pseudonym has been used throughout this Report and Recommendation when referring to this inmate.

[5] The evidence includes a notation from the Inspector General's report which states: "Homosexuality is strictly forbidden by gang member charter by-laws which can be punishable by harm/death to the gang member performing said acts."  Defendants' Ex. D [ECF No. 39-4 at 2].

Plaintiff was trans-gender did not mean she would "receive special treatment, or run things in solitary confinement."  *Id.*

Plaintiff informed both Defendants that inmate Adams "had already attacked" her "by non-verbal communication," but Defendants told Plaintiff that she "would not receive protection" and placed Adams in the cell with Plaintiff.  ECF No. 47 at 7.  Plaintiff says that she begged them not to put inmate Adams back in her cell, to no avail.  *Id.*

Later that evening, Plaintiff said that inmate Adams placed her in "a choke-hold" and then sexually assaulted her.[6]  ECF No. 1 at 7.  Plaintiff said that Adams forced her to perform oral sex and ejaculated in Plaintiff's mouth.  *Id.* at 6-7; see also ECF No. 47 at 7.  Plaintiff saved some of Adams' semen by spitting it into a plastic sandwich bag which was inside her locker, and then hid the bag inside her pants.  *Id.*; ECF No. 39, Defendants' Ex. D [ECF No. 39-4 at 2].  After the assault, Adams threatened to kill Plaintiff if she told anyone about what happened.  ECF No. 39-4 at 2.

---

[6] Plaintiff described inmate Adams "as a black male 6 feet tall, muscular build, and weighing 200 pounds."  Defendants' Ex. D [ECF No. 39-4 at 1].

Plaintiff reported the assault the following day (May 16, 2018) and filed a "prison rape elimination act complaint."  ECF No. 47 at 7; *see also* Defendants' Ex. C [ECF No. 39-3 at 1].   The Office of the Inspector General conducted an investigation which was upgraded to a criminal investigation in July 2018.  Defendants' Ex. D [ECF No. 39-4 at 1].  Inmate Adams initially denied Plaintiff's allegations, saying that he could not interact with Plaintiff because he was a gang member.  *Id.* at 2.  However, Plaintiff's evidence (the sandwich bag) was turned over to the Florida Department of Law Enforcement for DNA analysis.  *Id.*  The DNA results supported Plaintiff's sexual contact allegation and was a match to inmate Adams; thus, it was recommended that inmate Adams "be presented with the DNA and asked for comment."  *Id.* at 3-4.  When inmate Adams was asked to explain how "his DNA was found inside inmate Jenrette's body," he recanted "his initial testimony" and admitted that he had lied.  ECF No. 39-4 at 4.  Adams then said "the oral sex was consensual by all parties involved" and denied "choking, threatening by force, or" otherwise forcing Plaintiff to "have any form of sex with him."  *Id.*  Adams said that Plaintiff Jenrette made the "allegations again him to be transferred."  *Id.*

The Inspector General's Office suspended its investigation.  *Id.*
Plaintiff contends that criminal prosecution was ultimately not pursued
against her attacker because inmate Adams was already serving a life
sentence.[7]  ECF No. 47 at 7.

At the time of the incident, Defendant Raymond Bartell was employed
at Jefferson C.I. as a Correctional Sergeant.  Defendants' Ex. A [ECF No.
39-1 at 1].  Defendant Bartell states in his declaration that he does "not
recall this incident or inmate Fromon Jenrette" (the Plaintiff), or that Plaintiff
claimed "to be transgender."  ECF No. 39-1 at 2, 3.  Nevertheless,
Defendant Bartell denies all of Plaintiff's allegations and states that if any
inmate had made claims about his safety if another inmate was placed in
his cell, he "would have contacted the shift Officer in Charge (OIC) for
authorization."  *Id.*  Defendant Bartell said that he "did not have authority to
make placements" on his own.  *Id.*  He also said that he is unaware as to
who "authorized the placement of Adams in the same cell with Jenrette, but
[he] was not the one who did so."  *Id.* at 3.  Defendant Bartell specifically
denies that either Plaintiff or Adams made any statements about not being

---

[7] The Inspector General's report also indicated that the State Attorney's Office
advised that if prosecution were "pursued, it [was] unlikely the defendant [would] receive
any meaningful sentence given his current life sentence."  ECF No. 39-4 at 3-4.

housed together and, if they had, Defendant Bartell "would have advised the OIC immediately."  *Id.* at 3.

Defendant Adam Pumphrey was also employed at Jefferson C.I. at the time of this incident; he worked as a Correctional Officer.  Defendants' Ex. B [ECF No. 39-2 at 1].  Defendant Pumphrey similarly states in his declaration that he does "not recall this incident" or the Plaintiff or that Plaintiff claimed to be transgender.  ECF No. 39-2 at 2, 3.  However, he denies all of Plaintiff's allegations, including that Defendant Pumphrey ignored Plaintiff's request to not have Adams placed in her cell.  *Id.* at 2. Defendant Pumphrey states that he has "never knowingly endangered an inmate by placing him in a cell with someone who was a risk factor to him as determined by higher authorities.  *Id.*  Defendant Pumphrey also declares that had Plaintiff stated that she had a fear for her safety, Pumphrey "would have alerted a higher authority, who then could have made a determination of whether protective custody was appropriate."  *Id.* Defendant Pumphrey states that he "would never have simply ignored any such request."  *Id.* at 3.  Likewise, he denies that either Plaintiff or Adams made any statements about not being housed together and, if they had,

Defendant Pumphrey "would have advised a higher level authority immediately." *Id.*

**ANALYSIS**

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Although the Amendment does not require comfortable prisons, it prohibits inhumane ones. Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981) (cited in Farmer, 511 U.S. at 832, 114 S. Ct. at 1976). The Eighth Amendment guarantees that prisoners will not be deprived of the "minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)), which includes "food, clothing, shelter, sanitation, medical care, and personal safety." Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr.l Inst., 452 F.App'x 848, 850-851 (11th Cir. 2011)). The Amendment also imposes duties on prison officials who "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable

measures to guarantee the safety of the inmates,' Hudson v. Palmer, 468 U.S. 517, 526-527, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984)." Farmer, 511 U.S. at 832, 114 S. Ct. at 1976.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  511 U.S. at 828–29, 114 S. Ct. at 1974 (citing Helling v. McKinney, 509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993); Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991); Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).   It has been well established since Farmer that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners."  511 U.S. at 833, 114 S. Ct. at 1976 (noting that "gratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penological objectiv[e]'") (citations omitted); *see also* Washington v. Warden, 847 F. App'x 734, 737 (11th Cir. 2021), *cert. denied* 2021 WL 4508715 (U.S. Oct. 4, 2021).  Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847, 114 S. Ct. at 1984

In a failure to prevent harm case, the inmate must show that prison officials "acted with deliberate indifference to a substantial risk of serious harm." Washington, 847 F. App'x at 737; Farmer, 511 U.S. at 834, 114 S. Ct. at 1977.  Plaintiff has presented evidence to meet that burden.  Plaintiff has demonstrated that Defendants were given notice that inmate Adams would physically attack her because she was either transgender or homosexual.  It has been undisputed that Plaintiff has a feminine voice, female appearance, and presentation.  However, Defendants deny that either Plaintiff or Adams made statements to them about not being housed together, they deny knowing Plaintiff is transgender, and they deny knowing Plaintiff was in fear of her safety if housed with inmate Adams. That is a genuine dispute of material fact.

In addition to showing that a substantial risk of serious harm existed, a prisoner must show that the defendant prison officials were deliberately indifferent to that risk of harm.  Farmer, 511 U.S. at 837, 114 S. Ct. at 1979; Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019).  Doing so requires "both a subjective and an objective component."  Marbury, 936 F.3d at 1233.  "Subjectively, the 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and ... also draw the inference.'"  936 F.3d at 1233 (citation

omitted).  "Objectively, the official must have responded to the known risk

in an unreasonable manner, in that he or she 'knew of ways to reduce the

harm' but knowingly or recklessly declined to act."  936 F.3d at 1233

(citation omitted).

Again, there is a genuine dispute of fact between the parties.

Defendants deny any knowledge of a need for protection.  However,

Plaintiff has presented evidence that Defendants were personally advised

by Plaintiff that she needed protection from inmate Adams.  Plaintiff states

that she begged the Defendants not to put inmate Adams in her cell.

Moreover, at the summary judgment stage of litigation, all reasonable

inferences must be resolved in the light most favorable to the nonmoving

party, in this case, the Plaintiff.  Plaintiff presented evidence that earlier in

the day, prison officials brought inmate Adams to be housed in the same

cell with Plaintiff.  Inmate Adams told them that he could not be housed

with Plaintiff because he was in a gang and Plaintiff was homosexual.  He

said that he would "beat" and "f– up" the Plaintiff.  Based on those

statements, the prison officials did not house Adams with Plaintiff.

Undoubtedly, paperwork that was prepared based on the changed housing

assignment.  Moreover, Plaintiff's evidence is that when the Defendants
came to Plaintiff's cell, the Defendants said that Adams would be placed in
Plaintiff's cell "to prove a point" and show that "inmates will not dictate
housing."  Those statements support finding that the Defendants were
aware that housing Plaintiff with inmate Adams presented a security risk
which other officials had deemed credible and justified a change in
housing.  The inference which must be given is that Defendants were
aware of that earlier incident and knew of a specific threat to Plaintiff from a
specific inmate.  Washington, 847 F. App'x at 738.

Beyond the specific risk to Plaintiff, the inference from Defendants'
Inspector General's Report is that Defendants would also be aware of the
substantial risk of harm in housing a gang member with a "feminine"
prisoner who is either homosexual or transgender.  While that inference
may support only a general threat of potential violence, see Washington,
847 F. App'x at 738, when coupled with the more specific threat from
inmate Adams, the prior housing change, and Plaintiff's repeated request
for protection, it must be inferred that Defendants were subjectively aware
of facts which presented a substantial risk of serious harm to Plaintiff and,
objectively, the Defendants responded to that risk "in an unreasonable

manner" by seeking to "prove a point" that prisoners would not control housing decisions.

Finally, Plaintiff has demonstrated the "necessary causal link" between the officer's failure to act reasonably and the plaintiff's injury." Marbury, 936 F.3d at 1233.  Plaintiff's evidence reveals that inmate Adams was placed in his cell by the Defendants, thereby creating the opportunity for Adams to sexually assault Plaintiff.  But for that placement, the likelihood that Adams could assault Plaintiff would be drastically reduced.

Plaintiff has come forward with specific facts showing there is a genuine issue for trial.  If Plaintiff's evidence is believed, the Defendants were aware of a substantial and specific risk of harm to Plaintiff but "recklessly declined to act" to protect him and violated Plaintiff's Eighth Amendment rights.  *See* Marbury, 936 F.3d at 1233.  If Defendants' evidence is believed, they were unaware of any risk of harm to Plaintiff and cannot be held liable for Plaintiff's injury.  In this case, there is a genuine dispute of material fact which requires the denial of Defendants' summary judgment motion.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 39, be **DENIED** because there is a genuine dispute of material fact, and this case be **REMANDED** to the undersigned for further proceedings.  It is also **RECOMMENDED** that Plaintiff's motion for the appointment of counsel, ECF No. 52, be **GRANTED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 21, 2021.


 S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**